AGNEW *vs.* THE BANK OF GETTYSBURG.—June, 1828.

Where matter of defence arises after the institution of a suit, it must in general be specially pleaded, and cannot be given in evidence under the general issue.

Defences arising after the commencement of the action, should be pleaded *puis darein continuance*, or against the further maintenance of the suit.

When the defendant pleads the general issue in *assumpsit*, he asserts that at the time of the commencement of the suit, some reason existed, which should have prevented the plaintiff from bringing his action.

So where in the trial of an action of *assumpsit* by a chartered company, under the general issue, the plaintiff having given a charter in evidence, by which it appeared that the duration of the company was limited to a

period subsequent to the commencement of the suit, yet anterior to the time of trial, the defendant cannot avail himself of that fact to nonsuit the plaintiff.

Under the general issue in a suit by a corporate body, it is necessary for the plaintiff to shew its charter.

Yet where such charter is a public law, which judicial tribunals are bound to notice *ex officio*, it is not necessary to give it in evidence to make out the plaintiff's title.

A bank charter granted by the governor of one of the United States, reciting his authority by the laws of that state to make such grants, and authenticated by the great seal thereof, in the absence of proof that its laws did not warrant such an exercise of authority on the part of the governor, is sufficient evidence *per se* to prove the existence of such bank.

Bills of exceptions are no part of the pleadings, and it is alone on the pleadings and verdict, that the court pronounce judgment.

The demand of payment of a note, payable at a particular place, by one having it in possession, at such place, and on the day it fell due, is presumptive evidence of his authority to demand and receive payment.

When a note payable at the town of G, fell due on Saturday, and notice of its dishonour on that day was delivered to the endorser a resident at E, on the ensuing Monday, and no evidence was offered of any mail between those towns on Saturday or Sunday, such notice is sufficient.

APPEAL from *Frederick* County Court. This was an action of *assumpsit*, brought the 30th of July 1824, on a promissory note, by the appellees, (the plaintiffs in the court below,) as the holders thereof, against the appellant, (the defendant,) being one of the endorsers. The defendant pleaded *non assumpsit*, and issue was joined. At the trial of this cause on the 15th of February 1826, the plaintiffs gave in evidence the promissory note upon which the action was brought, viz.

"Doll. 1100. *Gettysburg*, Dec. 27, 1823.

Sixty days after date, I promise to pay *Charles W. Bigham*, or order, at the Bank of *Gettysburg*, eleven hundred dollars, without defalcation—value received.

*John Agnew.*"

Endorsed, "*Charles W. Bigham, D. Agnew, Robert L. Annan.*" And the endorsement by *Charles W. Bigham*, to whose order the said note was payable, and the names of *David Agnew*, (the defendant,) and *Robert L. Annan*, appearing upon the back thereof. And then gave in evidence an agreement entered into by the counsel of the parties, "that *Thaddeus Stevens*, esquire, of *Gettysburg*, take the depositions of

such witnesses as may be brought before him on the part of the plaintiffs or defendant, upon interrogatories to be filed, subject to such objections as the parties might make if the testimony were offered by the witnesses in open court." And also gave in evidence the depositions of certain witnesses taken under a commission issued to the said *Stevens* for that purpose. *William Boyd* deposed, "that some time ago, the exact time not recollected, *David Edie* of *Gettysburg*, gave him three different papers, directed to *David Agnew, Charles W. Bigham* and Doctor *Robert L. Annan,* which he said were notices to them, and requested him to serve them on the parties in *Emmitsburg.* That on the same day he went to the house of *Charles W. Bigham* in *Emmitsburg,* where he saw *John Agnew* and *David Agnew,* and on inquiry, *David Agnew* told him that *Charles W. Bigham* was not at home, but that he shortly would be, and that Doctor *Annan* had been there a short time before, and would also be back again soon. That he then gave all the notices to *David Agnew,* who read them in the presence of *John Agnew,* and promised to deliver them to *Charles W. Bigham* and Doctor *Annan,* that day or the next." *David Edie* deposed, that "he has looked at the note marked A, and that it was presented *to* [by] him at the Bank of *Gettysburg* on the 28th of February 1824, in the afternoon of said day, for payment. That the said note was not paid when so presented; and that he, on the same day in the afternoon, protested the said note for nonpayment, by proclaiming that he presented it for payment at the time and place aforesaid, and by reducing the protest to writing; and that the exhibit *B,* was the original protest made at the time and place aforesaid. That he made out three notices of the protest, one to each of the endorsers, to wit, *Charles W. Bigham, David Agnew* and Doctor *Robert L. Annan;* and on the first day of March 1824, he delivered said notices to *William Boyd,* with instructions to deliver them to the said *Charles W. Bigham, David Agnew* and Doctor *Robert L. Annan,* respectively." The plaintiffs then gave in evidence that the signatures of *John Agnew, Charles W. Bigham, David Agnew* and *Robert L. Annan,* as they appear on the note, were the proper handwriting of the said parties. They then gave in evidence the

following patent under the great seal of the state of *Pennsyl-vania:* This patent, dated the 29th of April 1814, recited, that "Whereas in and by an act of the general assembly of this commonwealth, passed on the twenty-first day of March last, entitled, An act relating to banks, it is, among other things provided, that when fifty or more persons in any one of the districts in the said act enumerated, shall have subscribed not less than half the number of shares therein allotted to such district, and the sum of twenty *per cent.* has been actually paid on the amount so subscribed, the commissioners within such district, or a majority of them, shall certify under their hands and seals, the names of the subscribers, and the number of shares subscribed by each, with the amount so actually paid, to the governor of this commonwealth; and thereupon the go-vernor shall, by letters patent under his hand and seal of the state, create and erect the said subscribers, and if the whole number of shares allotted to such district be not then subscrib-ed, then also all those who shall afterwards subscribe to the number aforesaid, into one body politic and corporate, in deed and in law, by the name, style and title, in the said act affixed to the bank of such district. And whereas *Robert Hayes,*" &c. "a majority of the commissioners named in the said act of the general assembly to receive subscriptions of stock for *The Bank of Gettysburg,* in the county of *Adams,* have certified to me, in writing, under their respective hands and seals, that the following named persons have subscribed the number of shares set opposite to their respective names; that is to say, *Alexander Cobean,* one hundred shares, *James Gettys,*" &c. &c. "amounting in the whole to four thousand seven hundred and thirty shares; and the said commissioners have also certi-fied to me that the sum of twenty *per cent.* has been actually paid to them on the amount so subscribed. Now know ye, that in pursuance of the power and authority to me given in and by the said recited act of the general assembly, I the said *Simon Snyder,* governor of the said commonwealth, do by these presents, which I have caused to be made patent, and sealed with the great seal of the state, create and erect all and every of the subscribers herein before particularly named, and also all those who shall hereafter subscribe to the number of

seven thousand shares, into one body politic and corporate, in deed and in law, by the name, style and title, of *The Bank of* *Gettysburg,* in the district of the county of *Adams,* and by such name they shall have continued succession until the first day of April one thousand eight hundred and twenty-five; and generally to be subject to the duties, and invested with the powers, rights and privileges, for the period aforesaid, which by the law, directing these letters patent to issue, is intended; unless the legislature shall sooner revoke and annul the chartered privileges granted. In testimony," &c. The defendant then prayed the court to instruct the jury, that from the evidence offered to the jury, the plaintiffs were not entitled to recover. Which direction and opinion, the Court [*Buchanan,* Ch. J. and *Shriver* and *T. Buchanan,* A. J.] refused to give. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before EARLE, MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*W. Schley,* for the Appellant, contended, 1. The plaintiff was bound to shew, under the general issue, its corporate existence. The evidence adduced for that purpose was insufficient. 2. The court below, upon the defendant's prayer, were bound to give effect to all the legal evidence in the cause, without restricting its application to the mere issue upon the pleadings. The plaintiff's dissolution was legally in evidence; and the court ought to have granted the instruction to the jury, that the plaintiff, *upon the evidence,* was not entitled to recover. Even if the court were right in refusing the defendant's prayer, their *judgment* ought to have been for the defendant, *non obstante* *veredicto;* as the plaintiff's dissolution was shewn by the record. 3. There was no sufficient evidence of due demand and notice.

1. The plaintiff was bound to shew, under the general issue, its corporate existence. *Henriques v Dutch West India Co.* 2 *Ld. Raym.* 1535. S. C. 1 *Stra.* 612. *National Bank of* *St. Charles v De Bernales,* 11 *Serg. & Lowb.* 474. *Jackson* *v Plumb,* 8 *Johns. Rep.* 378. *Bank of Utica v Smalley,* 2 *Cowen's Rep.* 770. The plea of *nul tiel corporation* is bad,

on special demurrer, as amounting only to the general issue. *Bank of Auburn v Weed & Aiken*, 19 *Johns. Rep.* 300. The case of *Whittington v Farmers Bank*, &c. (5 *Harr. & Johns.* 489,) is not in point. It was a domestic corporation, created by a public law. Where an act of assembly, incorporating a bank, reserves to the state the right of subscribing for stock; and also provides for the prosecution of its directors, by indictment, in case of fraud, &c. it is a public law, and must be judicially noticed by the court. *Towson v Havre de Grace Bank*, 6 *Harr. & Johns.* 47. The testimony adduced was not *sufficient* to prove the corporate existence. The act of the legislature of *Pennsylvania*, under the authority of which the governor professes to have acted, ought also to have been shewn. The recital in the *charter*, is no proof of the existence of the law. 2 *Starkie's Evidence*, 568. *Laws U. S. 26th May* 1790. But admitting the existence of "an act relating to banks," does it confer the powers undertaken to be exercised by the governor? It is not recited in *hæc verba;* and the governor may have misconstrued the law. When a law is proved, it is for the court to construe it, and decide upon its effect. *Conrequa v Willing, et al.* 1 *Peter's Rep.* 229. The governor may have failed to gratify all the provisions of the law. A specially delegated power must be strictly pursued. *Kerr v State*, use *Levy Court*, 3 *Harr. & Johns.* 561. *State*, use *Levy Court, v Merryman*, 7 *Harr. & Johns.* 79.

2. The charter was *functus officio* when offered in evidence. By its own limitation the corporation was dissolved. The court could not read part of the paper, and reject the residue. The proof was *felo de se*. There is a difference between evidence *introduced* by the plaintiff, and testimony *offered* by the defendant. The latter can give nothing in evidence, under the general issue, which has occurred subsequent to the commencement of the suit, because it would be a *surprise* on the plaintiff. 1 *Chitty's Pl.* 472. But the operation of *evidence*, when introduced by the plaintiff, would seem to be the same, as if introduced by the defendant, under an appropriate plea. The plaintiff's dissolution was a total extinction of the debt. 1 *Levins*, 237, cited in 1 *Blk. Com.* 482. 2 *Kent's Com.* 246 There was no plaintiff in being; the attorney's warrant to appear was re-

voked by the plaintiff's dissolution.    But, at all events, the
*judgment* of the court was error, notwithstanding *the issue
found* in favour of the plaintiff.    *Le Bret v Papillon*, 4 *East,*
502.    This court will give such *judgment*, as the court below
should have given.    *Ibid.*    The inquiry is, whether the *judg-
ment* is right.    The appeal was prayed before the act of 1825,
*chap.* 117.

3. The demand was not by a proper person.    The party
making a demand should be competent to receipt for the money.
*Chitty on Bills*, 332.    The bank, being holder, and the note
being there payable, the books ought to have been examined,
in order to see whether the maker had provided funds.    *United
States Bank v Smith*, 11 *Wheat.* 177.    The court will take
notice of the calendar, of leap year, &c.  1 *Chitty's Plead.* 221.
The year 1824 was leap year; and the notice to the endorser
was not in due time.    2 *Stark. Evid* 258, 269.    *Chitty on
Bills*, 277.    *Lindo v Unswortt*, 2 *Campb.* 602.

*Ross*, for the Appellees, stated, that the original charter of
the *Bank of Gettysburg* expired, by its own limitation, in
1825.    That by an act of assembly of *Pennsylvania* passed
in 1824, the time of its limitation was extended to 1833.    At
the time of the trial the plaintiff's counsel had not in their pos-
session this continuing law, duly authenticated.    It forms no
part of the record, and is now only stated to prevent an im-
pression that the bank is dissolved.

Where there is a general prayer to the court to instruct the
jury, all evidence not objected to is considered as admitted.    It
takes the fact from the jury, and submits a question of law to
the court, as a demurrer to evidence.

There is no error in the court's rejecting a prayer, unless it
ought to have prevailed in the very terms in which it was
made.    11 *Wheat* 94.

The court could not, in any state of pleadings, grant the pray-
er in the terms in which it was made.    If the defendant below
had plead specially, the expiration of the charter after the com-
mencement of the action, and the plaintiff had demurred to
the plea, the court could only have ruled, "that the plaintiff
ought not further to have or maintain his action."    This direc-

tion would have admitted that the action was well brought, and would have suspended the suit until the plaintiff had removed the disability; whereas the direction as prayed by the defendant below would have all the effect of a plea to the merits, and would have operated as a complete bar to the plaintiff's claim. 7 *Johns. Rep.* 194, *(note a.)* *Le Bret v Papillon,* 4 *East,* 506.

There is an essential difference between the death of a natural person and a corporation. Whenever the death of a natural person happens pending the writ, the right descends to the representative, and a new cause of action springs up; and the plea is not, therefore, in the same condition as it was in the lifetime of the party; the suit abates at common law, because the death introduces a new party, and a new cause of action. *Gilb. H C. P.* 195. 1 *Bac. Ab.* 7. 6 *Wheat.* 262. Not so in the case of a corporation; it is a creature of the law, and its existence can be continued by the legislature beyond the term originally granted. The plea is in the same condition as when living under its original charter. The expiration of its original term does not abate the suit—neither the party nor the rights are altered. The plaintiffs below had no right to anticipate a defence which might arise after the action was commenced. The defendant's plea did not apprize them of this defence, and all pleadings are designed to give the parties an opportunity to answer as to traverse the facts alleged. The court could not deny the plaintiffs the right to reply sufficient matter to avoid the defence, if the defendant had pleaded it, and being bound to plead it, he is estopped from giving it in evidence under the general issue. The plea of *non assumpsit* speaks of the time past, and goes to the commencement of the action. 1 *Salk.* 278. 3 *Term.* 186. 4 *East,* 507. 9 *East,* 85. Under this issue the plaintiff is only bound to prove the traversable facts mentioned in his nar, and which are put in issue by the plea. A corporation need not aver in the declaration that they are a corporation. In the case at bar, the parties to the promissory note recognize the *Bank of Gettysburg* as a bank, by making the debt payable *at the Bank of Gettysburg without defalcation,* and are estopped by this admission to say otherwise, on the general issue. The general issue

being pleaded, the plaintiffs are not bound to shew they are a body corporate. *Whittington v Farmers Bank,* 5 *Harr. & Johns.* 489.

The defendant under this issue may give in evidence—1st. No cause of action. 2dly. That the plaintiff had no subsisting cause *of action at the commencement of the suit.* 1 *Chitty,* 472. But the defendant cannot give in evidence *any matter* which arose *after the commencement* of the suit; not even payment; nor the statute of limitations, though it appear from the plaintiffs own shewing, or even from the declaration itself, that the cause of action did not arise within six years. These facts must be plead. 2 *Stark. on Evid.* 129. 3 *Serg. & Lowb.* 6. A jury can take no cognizance of any fact done since the action brought, for that was not in issue. *Gilb. H. P. C.* 106. If the defence or disability accrued after the commencement of the suit, it must be plead specially. 12 *Mod.* 400. 11 *Johns. Rep.* 423, 4. 3 *Campb. Rep.* 153, 4. Payment after action brought cannot be given in evidence under the general issue, but must be introduced by plea. *Holland v Jourdine,* 1 *Holt,* 6, reported in 3 *Serg. & Lowb.* 6. The expiration of the charter *after the action brought* is a dilatory plea. It is not a plea to the action or the merits. 3 *Blk. Com.* 301. 5 *Harr. & Johns.* 489. It is a special plea, and not technically a plea in abatement, it concludes to the person, and if allowed, suspends the remedy, until the disability is removed. 3 *Blk. Com.* 301, 3. The defendant was not bound to plead it *puis dar. cont.* nor in further maintenance, &c. He was bound to plead it specially so as to enable the plaintiff to reply or to demur, and the court would have received the plea any time before the jury had given their verdict. 3 *Caine's Rep.* 172. 7 *Johns. Rep.* 194, *(note a.)* To give it the effect of a plea in bar, as to the action, is supposing the charter had expired before the suit was brought.

If the defendant does not plead his new matter, he stands and depends on his first plea, and waives his new matter. *Gilb. Hist. C. P.* 84. 6 *Term.* 265. *Society, &c. v Wheeler,* 2 *Gallison's Rep.* 135. Whether the facts should come from one party or the other to bring the plaintiffs within, or to take the plaintiffs out of, the disability to sue, it is very clear that every

fact must appear on the record, which negatives their right to sue. *2 Gallison*, 130.

In the case at bar, in the trial below, the defendant did not by plea, negative the plaintiff's right to sue or to prosecute the suit to judgment, for the charter though given in evidence, formed no part of the record below, and not appearing on their record, the court could not give the direction as prayed.

The plaintiffs produced the charter to sustain their right and capacity to bring the suit, and objected to the defendant's using it as the evidence of any fact, to support a defence arising from any new matter since the commencement of the action. The court below, by rejecting the defendant's prayer, would not receive it as evidence under the general issue. The defendant excepted, and the charter is made a part of the bill of exceptions.

If upon the pleadings in this cause, the charter was improperly submitted to the jury, the court of appeals will reject it, whether produced by the plaintiffs or defendant. *7 Harr. & Johns.* 50, and the cases there cited.

In *Morgan v Painter*, in 6 *Term.* 265, it appeared in evidence that the plaintiff was a *feme covert*, yet the court would not receive it under the general issue, but drove the defendant to his plea. No admission of the parties can, or ought to restrain the court from looking into the record. *2 Saund.* 101. *1 Salk.* 270. If upon looking at the record, I should see that the defence did not arise till after the action brought, I should say that the evidence given did not apply to the plea so pleaded. *6 East*, 416.

To the *second* part, of the *first point*. The appellees' counsel reply, that the patent is authenticated under the seal of the Commonwealth of *Pennsylvania*, which by the consent of nations is received, as the ultimate limit of proof, beyond which no solemnity of authentication is required. Letters patent, if not duly authenticated, according to the rules of the common laws, or the provisions of the acts of Congress, may be rejected, but when they are received, the seal imparts to it all the character of the state. It gives to the instrument to which it is appended, absolute verity. To impeach its statements in toto or in part, would be to impugn the veracity of the state, whose

seal it bears.  The patent is as full proof of the act of assembly it recites, as of the charter itself, which creates the *Bank of Gettysburg*, a body corporate.  The appellees are at a loss to perceive the distinction attempted to be made by the appellant's counsel, "that the letters patent are admissible evidence, but that they are not sufficient *per se* to prove that the corporation ever existed; to prove this, the act of assembly vesting the power in the governor, should have been given in evidence."  This argument seems to imply a distinction between the proof of the power and the charter.  If the letters patent are made evidence by reason of the seal of the state being annexed thereto, they must *per se,* prove all the facts contained in the patent, for the whole is greater than its part.  When the governor recites his power to grant a charter, and authenticates this fact under the seal of the state, it would be impeaching the legal effect of the seal to call in question his power to issue the patent.  The seal proves the power, as well as the charter.  For any higher evidence of the power to grant the charter, than the seal itself imports, is impossible, and to require extrinsic evidence of it, would be to subvert the rule itself, that a national seal is the highest proof of authenticity.  *U. States v Johns,* 4 *Dallas,* 416.   *Church v Hubbart,* 2 *Cranch,* 187.   *Griswold v Pitcairn,* 2 *Vol. Connecticut Reports,* 90, 91, *by Thos. Day, his 2d Series of Rep.*   As long as the patent remains unrepealed, it is conclusive evidence of the governor's power to grant it; it cannot be impeached collaterally by the appellants.  Letters patent are matter of record, and cannot be vacated at law, unless they are absolutely void on the face of them, as the issuing of them was without authority, as prohibited by statute; they can only be avoided in a regular course of pleading, in which the fraud, &c. is directly put in issue.   10 *Johns. Rep.* 23.   7 *Cranch,* 420.   9 *Cranch,* 92, 98.   11 *Wheat.* 382, 4.

The case at bar, is not a case of *conflictus legum,* between the Commonwealth of *Pennsylvania,* and the state of *Maryland.*   If the governor's power to grant the charter is to be tried, it then becomes a question between the commonwealth and its own citizens, and can only be avoided on the part of the government or by some individual prosecuting in its name.  The courts of *Maryland* will not permit the question to be tried

collaterally in this form of action. 5 *Johns. Ch. Rep.* 381. 10 *Johns. Rep.* 26.

As to the *third point.* The appellees state, that a demand of payment of a note by a notary, as a person having the lawful possession thereof, is sufficient. 18 *Johns. Rep.* 230. 3 *Cowen,* 263. That *David Edie* was a notary, and that he had the lawful possession of the note, is abundantly manifest from the testimony taken under the commission in the cause. He presented the note, and protested it for nonpayment; this proves him to have been at least the agent of the holders, until it is shewn he acted as a stranger and without authority. 3 *Cowen,* 263.

The year 1824 was a leap year; the 28th February, the 3d day of grace when the note was protested, was Saturday. The 29th was Sunday, and on Monday the 1st March the notice was personally served on the defendant. When the 3d day of grace is Saturday, notice of nonpayment need not be given till Monday. 3 *Cowen,* 262. 2 *Caine's,* 343. 2 *Campb.* 602.

*Palmer,* in reply. Two important questions occur in this case—1. Whether under the general issue plea, the defendant can give in evidence the nonexistence of the plaintiffs as a corporation? 2. Whether there has been sufficient offered by the plaintiffs to entitle them to recover?

1. There was not evidence offered by the plaintiffs to shew that the charter existed at the trial, or indeed that it ever had existed. The letters patent offered in evidence are different from charters granted by the king in *England.* They are different from grants of land in this state. Letters patent are evidence of law; but grants of land are evidence of title. In this case there was a specially delegated power vested in the governor, by an act of assembly, to grant the charter on certain requisites being complied with. Under the general issue a private corporation is bound to produce its charter. A corporation has ideal existence; and it must be proved that the suit is in the corporate name. *Bank of Auburn v Weed,* 19 *Johns. Rep.* 300. *Henriques v Dutch West India Company,* 2 *Ld. Raym.* 1535. In *Whittington v The Farmers Bank, &c.* the court refused to receive the plea, the rule day having expired. There, as in *Towson v The Havre de Grace Bank,*

6 *Harr. & Johns.* 47, the acts creating the charters were public acts which the court were bound to notice without being pleaded or offered in evidence.    The plaintiffs must prove that they were a corporate body, not only when the suit was brought, but also at the time of the trial.    As to the manner of granting charters in *England*, and the effect of them, he referred to 2 *Kent*'s Com. 246. 2 *Bac. Ab.* 3. Case of *Sutton's Hospital*, 10 *Coke*, 33.    Here there was a special delegated power to the governor to grant the charter; and the plaintiffs ought to have shewn the authority by which such power was delegated, in order that it might be seen that he had strictly complied with the directions given. *Gilbert v The Columbia Turnpike Company*, 3 *Johns. Cas.* 107. *Inhabitants of Chittinston v Penhurst*, 2 *Salk.* 473.    All private acts of the legislature of this state, and all acts of the legislature of another state, must be given in evidence. *Portsmouth Livery Company v Watson*, 10 *Mass. Rep.* 91. *Whetcroft v Dorsey*, 3 *Harr. & M'Hen.* 357. *Legrand v Hampden Sidney College*, 5 *Munford*, 324. *Pearl v Allen*, 2 *Tyler's Rep.* 311.

2. By the expiration of the charter, the corporation ceased to exist, and the debt was extinguished—there was no plaintiff in court. 2 *Kent's Com.* 246.    1 *Blk. Com.* 484. *Kyd on Corp.* 516.    *Colchester Corporation v Seaber*, 3 *Burr.* 1868. *Co. Litt.* 13. *b.*    It would not be a dilatory plea to plead the nonexistence of the charter.    Such a plea would go to the foundation of the action.    It would go to defeat the action, and to show that there was no existing cause of action, or person, to recover—that the right to recover was at an end.    Pleading is for the purpose of not taking the party by surprise. 1 *Chitty's Plead.* 215.    Here there could be no surprise.    What plea could the defendant have pleaded?    Not *puis darein continuance*—not in further maintenance of the suit, like the case of an alien enemy, which is only in suspension of the action. Here the debt was extinguished.    There was no party in court, or ever could be.    What was there to put in issue?    It was unnecessary to put that in issue which was admitted.    *Sullivan v Montague*, 1 *Doug.* 106. *Baylies v Fettyplace*, 7 *Mass. Rep.* 325. 3 *Burr*, 1345.

3. There has been no legal demand made of the drawer of

the note for payment.    The demand must be made by a notary public, or a known officer of the bank, the holder of the note. It must be by a person authorised to make it, and to receive payment.    *Chitty on Bills,* 333.    *Bank of Utica v Smith,* 18 *Johns. Rep.* 230.

ARCHER, J. delivered the opinion of the Court.  The various questions which have been discussed arise on the general prayer that the plaintiff is not entitled to recover.

The general issue having been plead, the plaintiff, to support the issue on his part, and to shew that at the commencement of the suit he had a right to sue, offered in evidence letters patent issued by the governor of *Pennsylvania* under the great seal of that state, whereby it appeared that the *Gettysburg Bank*, anterior to the suit, was a regularly chartered company of that commonwealth.  By the same letters patent it appears that the charter of the bank had, by its own limitation, expired between the time of bringing the suit, and the time of trial.  The defendant contends, that as it appears from the letters patent that the charter had expired, and that the corporation was extinct, he had a right to use the same as evidence under the issue, and that as it thus appeared the corporation had no longer any existence, the plaintiff was not entitled to recover.

The cases are very conclusive to shew, that where matter of defence arises after the institution of the suit, it must in general be specially plead, and cannot be given in evidence under the general issue, as in the case of a release given after the commencement of the suit, or a reference and award made *pendente lite,* or hostile alienage happening after the commencement of the action, or coverture of the plaintiff after action brought, or any matter of abatement occurring after suit brought, or after plea pleaded to the merits.    All other matters which go to the foundation and gist of the plaintiff's action, at the time of its commencement, with some very special exceptions, which it would be unnecessary to enumerate, may be given in evidence under the general issue.    Defences arising after the commencement of the action, should be plead *puis darein continuance,* or against the further maintenance of the suit.    It was said by Lord *Mansfield,* in *Sullivan v Montague,*

1 *Doug.* 106, that *actio non* went to the time of plea pleaded, and not to the commencement of the action; but this doctrine has been overruled, by subsequent cases, as departures from the law. 3 *T. R.* 185. 4 *East*, 503; and the rule now is, that when the defendant pleads the general issue in assumpsit, he asserts, that at the time of the commencement of the suit some reason existed which should have prevented the plaintiff from bringing his action. This doctrine is supported by several cases of high authority, and by esteemed compilers and elementary books on pleading. It is a doctrine too, as we apprehend, in general founded in justice, and calculated to prevent surprize. *Chitty's Plead.* 531, 635, and the authorities there referred to.

If then the defendant could not, under the general issue, have given in evidence the dissolution of the charter subsequent to the institution of the suit, it is quite impossible to say that he can nevertheless avail himself of the fact to nonsuit the plaintiff, because that fact appears in the letters patent, which the plaintiff is compelled to adduce. Whether the bank was dissolved or not pending the suit, was not in issue, and the fact of the dissolution of the charter having taken place after the commencement of the action, was not pertinent to the issue, and was not in evidence before the jury. The fact which the jury had to ascertain was, whether the corporation had a right to sue at the commencement of the action.

It is, however, said, that by the dissolution of the charter of the bank, the debts due to it were extinguished, that this therefore is matter which goes to the merits of the defendant's case, and can be given in evidence under the general issue. It is not necessary that we should express any opinion on the question how far the debts of a corporation are extinguished by the dissolution of its charter, whatever our views on that question may be, not considering that its determination is necessarily involved in this case, for we have seen that such a defence, arising after the commencement of the suit, would be no bar to the suit, where the defendant chooses to rest his defence on the general issue. On the admission of the correctness of the above doctrines, the defendant contends, that it was necessary it should be shewn on the trial, to enable the bank to main-

tain the suit, that it was incorporated, and that if necessary the evidence adduced is insufficient for that purpose.

That, on the general issue, it was necessary for the plaintiff to shew its charter of incorporation, is clear, as will be seen by a reference to the following authorities. 2 *Ld. Raym.* 1535. 1 *Strange,* 612. 2 *Bac. Ab.* 212. This law is adopted in *New York* by numerous decisions 8 *Johns. Rep.* 375. 14 *Johns. Rep.* 245. 19 *Johns. Rep.* 300. 2 *Cowan,* 378.

At first view it might be supposed that this question had been decided differently in the *Farmers Bank v Whittington,* 5 *Harr. & Johns,* and that the want of a charter could only be taken advantage of by a plea in abatement. But an attentive examination of the case will shew that such was not the judgment of the court. The charter of the *Farmers Bank of Somerset* was a public law, which judicial tribunals were bound to notice, and being such, the plaintiff could not, before he could make out his title to recover, be called upon to shew in evidence that which the court were bound *ex officio* to notice.

Upon authority it is clear that the plaintiff, to maintain his case, must shew that by law he has been effectually created a corporation.

Has the plaintiff exhibited evidence that the bank was duly incorporated? This evidence consists solely of a charter granted by the governor of the state of *Pennsylvania* to the bank, reciting his authority, by the laws of that state, to make such grants, and authenticated by the great seal of that state. The evidence thus offered, it is said, is deficient in this, that the laws of *Pennsylvania,* authorising the governor to issue his letters patent, in this respect should be proved to the court as other facts are proven, that the court might adjudge and determine whether the governor had complied with his powers. This objection is grounded by the counsel upon the general and well established principle, that specially delegated authorities must be strictly pursued, and that the court must have before them what will enable them to say whether these powers have been legally pursued or lawlessly transcended. But we think, that when the foundation of this principle is examined, it will be found inapplicable to the present case. This strictness in the execution of special authorities, is demanded, because every

delegation of them is in derogation of the common law, and of the rights conferred by it on the citizen. Have we judicial notice from the record, or otherwise, that this special power, delegated by a law of the Commonwealth of *Pennsylvania*, derogates from the rights of her citizens? The rights of her citizens, (except as members of the Union,) we mean their rights derived from her own municipal regulations, cannot be noticed by us. If the defendant had desired to place himself in a proper attitude to raise the objection, he should have exhibited proof in the record that the grant of this charter, as made, derogated from the rights of individuals as established by the laws of that commonwealth. The laws securing those rights, alleged to have been trenched upon by this charter, should have been proven as other facts; until that was done, the question obviously could not arise.

But in any aspect which can be given to the case, can this act of the governor be classed among the cases of special authorities, and subjected to all the limitations and restrictions which judicial determinations have put upon the execution of such power? It is on his part neither the exercise of a judicial or ministerial authority, but the fulfilment of a high executive trust and confidence; and it would certainly be demanded by that comity which is due from one sovereign state to another, that we should presume, until the contrary is proven, that the public acts of the chief magistrate of such state, purporting to be in execution of the laws, were legitimate acts, and within the scope of his powers as such officer, until the contrary is established by the proof of the laws themselves, by which it should be made to appear that he had overstepped the boundaries prescribed to him.

But it is contended by the defendant, that notwithstanding the court might have been right in the general direction which they gave, yet that, as it appears from the evidence in the bill of exceptions that the corporation was dissolved, the court were still bound, although the verdict was for the plaintiff, to have entered judgment for the defendant. In answer to this it may be briefly said, if there were not other objections to such a course, that the defendant would be in no condition to have made such a requisition on the court, until it had been spread

upon the pleadings in the cause, that the charter had expired, and such fact stood admitted by the pleadings. The bill of exceptions is no part of the pleadings, and it is alone on the pleadings and verdict that the court can be called upon to pronounce judgment.

The last question for our examination is the sufficiency of the demand and notice. The note was demanded at the *Bank of Gettysburg*, the place at which it was payable, and on the day it was due. The demand is proven to have been made by one having possession of the note for demand, and at the place where payable, which will furnish presumptive evidence of his authority to demand and receive.

The note fell due on Saturday, and notice was sent and delivered on Monday. It is said it should have been put in the mail at an earlier day than Monday. But there is no evidence there was any mail either on Saturday or Sunday. It cannot be pretended that it was necessary to send an express, and that too on Sunday. The notice, under the circumstances of the case, was sufficient.

JUDGMENT AFFIRMED.