(Decided 4th February, 1892.)

---

CHARLES J. BONAPARTE *vs.* THE BALTIMORE, HAMPDEN AND LAKE ROLAND RAILROAD COMPANY, and others.

*Right of Appeal—Sec. 29 of Art. 5 of the Code—Denial of Injunction—Street railroad Company — Incorporation— Laches.*

A preliminary injunction was asked for in the bill of complaint. Instead of granting the injunction at once, the Court passed an order setting a day for the hearing and restraining the defendants until the hearing could be had. When the hearing was had the preliminary injunction was refused. HELD :

That, under section 29 of Article 5 of the Code, an appeal would lie from the order.

Under the Act of 1872, ch. 284, which provided for the incorporation of the stockholders of The Baltimore, Hampden and Lake Roland Railroad Company, and named certain persons as commissioners to take subscriptions to the capital stock of the company, and required that the company should commence said railroad within three years from the passage of the Act, and complete the same in ten years, the company never acquired lawful corporate existence, the commissioners having delayed taking subscriptions to the stock until nearly ten years after the expiration of the ten years limited for completing the road.

The Act of 1872, ch. 284, did not create a corporation *eo instanti.* It provided for the formation of a corporation. The corporators were to be future subscribers to the stock ; and before there could be a corporation *in esse*, there must be the requisite legal

Bonaparte *vs.* Balto. Hampden & Lake Roland R. R. Co., *et al.*

subscribers capable of accepting, and who should accept the charter as offered, within a reasonable time.

APPEAL from the Circuit Court for Baltimore County, in Equity.

The case is stated in the opinion of the Court. A re-argument of the case "upon the question of the validity of the organization of the corporation under the charter of 1872, and the right to exercise the rights and franchises therein named," was ordered by the Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J., and was re-argued before the FULL BENCH.

*William Reynolds*, and *Charles J. Bonaparte*, (with whom was *William S. Keech*, on the brief,) for the appellant.

*Francis K. Carey*, and *Fielder C. Slingluff*, for the appellees.

IRVING, J., delivered the opinion of the Court.

By chapter 284 of the Acts of the General Assembly of 1872 was passed the Act entitled "An Act to incorporate the Baltimore, Hampden and Lake Roland Railroad Company." The first section of the Act names certain persons as commissioners to take subscriptions to the capital stock of the company; and in case of the death, resignation or refusal to serve of any of the persons named as commissioners, a majority of the remaining commissioners were given authority to appoint others. By the second section of the Act the *subscribers to the stock*, and their successors and assigns, are declared incorporated into a company by the name of "Baltimore, Hampden and Lake Roland Railroad Com-

pany," with perpetual succession under that name, with power of holding, purchasing, and encumbering property for the purposes of the corporation.

The third' section makes the capital stock of the company to consist of shares not exceeding two thousand in number, of the value of fifty dollars per share; five dollars of which was to be paid at the time of subscription, and the residue in such instalments as the president and directors should determine.

By the fourth section, as soon as five hundred shares should be subscribed, the commissioners to take the subscriptions, were authorized by publishing notice as prescribed, to call a meeting for the election of seven directors, who on being elected should elect a president, for whose qualification the fifth section provides.

The sixth section gives the company thus incorporated power to construct a railroad with one or two tracks, and necessary sidings for the transportation of travelers or freight by horse power, and gives the company the *exclusive use* of any streets or county roads over which they may wish to lay their tracks between Boundary Avenue and Lake Roland; "provided said track or tracks are constructed in such manner as not to interfere with the travel on said streets or roads."

The seventh section provides for the condemnation of the right of way and estimating damages and benefits. The eighth section prescribes the rate of fare, not exceeding five cents per mile, or for the fraction of one.

The ninth section authorizes the borrowing of money to the extent of twenty-five thousand dollars; the tenth authorizes the making of by-laws, rules and regulations and the appointment and employment of officers.

The eleventh section provides "that said company shall commence said railway within three years from the passage of this Act, and complete the same in ten years." By the twelfth and last section the Act is made to go into

Bonaparte *vs.* Balto. Hampden' & Lake Roland R. R. Co., *et al.*

effect upon its passage, and the right to alter, amend or repeal is reserved to the Legislature.

The appellant is a property owner residing on Roland Avenue, which is opened as a public avenue or highway, of the width of sixty feet, past his property; and has filed his bill for an injunction restraining the appellees from the construction of their road which has been begun. He charges that the tearing up and obstruction of the avenue as is proposed is without lawful authority and will be an unlawful obstruction of the appellant in going to and from his premises. He avers that what is being done is not for the purpose of using horses for the road, but with the design of using electricity as a method of propulsion. He sets up in his bill and contends in argument, that the Act of Assembly, relied on by the appellees as an Act of incorporation, is void because it is in conflict with the provisions of Art. 3, section 48, of the Constitution, which prohibits the granting of charters to corporations when there is a general law under which they may be formed, as appellant contends that there is.

2. That it was not accepted in time to confer on the corporation the powers which are claimed for it; or to create a corporation at all; and thirdly, that if originally accepted in time the charter gives no right to the corporation to lay down their tracks in the highway without the consent of the county commissioners, which has not been obtained.

The appellees deny all these several propositions, and the Court below agreed with the appellees in reference to them, and refused the preliminary injunction which was asked, and from that refusal this appeal was taken.

The appellees have moved to dismiss the appeal because it is contended that this particular case does not fall within the provisions of section 29 of Art. 5 of the Code.' When the bill was filed and preliminary

injunction was asked for, instead of granting the injunction at once and outright, the Judge set a day for hearing, and, until that hearing could be had, the Judge passed a restraining order. The contention of the appellees is, that this restraining order was a preliminary injunction and the order of the Court passed after the hearing which was appointed, was the dissolution of the injunction already granted. When the Court passed the order setting a day for hearing and meanwhile restraining the appellees till the hearing, it is very evident that the Court was not acting finally on that application for preliminary injunction. The Court wanted opportunity to consider whether a case was made for preliminary injunction, and therefore ordered a hearing, on the application made by the bill. When that hearing was had the preliminary injunction was refused, and the order refusing the same is the subject of the appeal. We think it does fall within the statute, and that appeal was properly prayed and granted. The motion to dismiss must be overruled.

For the purpose of deciding this case we need not consider the question whether the Act of Assembly, under which the appellee claims corporate powers was constitutionally enacted. We may assume, without so deciding, that it was; for conceding that it was lawfully passed, we are of opinion that the appellee never acquired lawful corporate existence under it. If it did not acquire corporate life under that Act, the injunction should have gone. The statute appointed commissioners to take subscriptions for the stock of the road it authorized to be built upon specified conditions and within certain limitations as to time. Those commissioners were not declared to be incorporated. They were the mere agents of the State to offer the charter to subscribers willing to accept it as offered. *State vs. Bull,* 26 *Conn.,* 179. Those who should become subscri-

bers for stock of the corporation intended to be formed, were by the second section of the Act declared incorporated. The Act went into effect on the day of its passage, and made a corporation possible, but the stock had to be taken as prescribed before there would be incorporators to accept the charter offered them. Subscribers to the extent of twenty-five thousand dollars, with five dollars per share actually paid in were necessary to justify an organization as a corporation. Before there could be an acceptance of the charter and its conditions and limitations, subscribers to the extent mentioned were necessary. They were incorporated, and not the commissioners. The latter being the State's agents to make the offer, could not accept it. They need not be stockholders, and might never be such; and until they should become subscribers for stock they could have no voice in the matter. Confessedly no stock subscriptions were made till September, 1891; which was more than nineteen years after the passage of the Act tendering the charter upon the terms and limitations mentioned in it, and more than nine years after the time limited for completing the road. Construing the Act, as is our first duty, we think it intended to offer the corporate existence and corporate powers mentioned in the Act to such stock subscribers as could accept the offer on the conditions annexed. The commissioners named were charged with a specific duty. They could do nothing which the Act did not authorize them to do. They could offer nothing to subscribers but what was given them to do; and it was their duty so to discharge their functions that the conditions of the offer might, by possibility, be complied with. Certain limitations were imposed in the Act. The road was to be commenced within three years, and was to be completed within ten years, from the passage of the Act.

The commissioners to take subscriptions must act therefore within such time that subscribers to the stock,

who were to be the corporation, could accept the conditions annexed, and could make the effort, at least, to do what was authorized. When therefore the commissioners delayed action until the *limitations imposed* by the Act had fully attached, and the time limited for beginning and finishing the road had long passed, it would seem to be clear that the powers of the State's agents were at an end; and their power must be enlarged by legislative action to justify their doing anything under the Act. They had no right to offer to subscribers anything but the charter with its conditions; and when the conditions became impossible of compliance, before the State's agents offered it to anybody, it is clear that they were *functi officio*, and the Act itself was no longer operative. It perished under its own limitations, and required legislative action again to vitalize it. The Legislature was influenced by what was supposed to be the public interest, no doubt, at the time when the Act was passed. Such a mode of conveyance for passengers and freight was deemed necessary for the public good at that time, and authority was given to form a corporation to meet the existing exigency. As was said in the case of the *State vs. Bull,* 26 *Conn.,* 179: "We can not suppose it was creating a supernumerary charter, to be laid away among the State records to await convenience or necessity of future times." In the case of the *State vs. Bull* the charter was not forfeited. That was not a case of forfeiture. The corporation was declared never to have come into legal existence; that the commissioners, acting as State's agents, had not acted within a reasonable time, and had surrendered their authority by their delay. They had once offered the charter for subscription of stock, and the requisite stock was not taken. Ten years afterward the commissioners again took subscriptions and the amount of stock, which the law had required should be taken before organization,

was taken and the company proceeded to organize; but the Court said the commissioners on the part of the State to take subscriptions had no longer any authority to act, and that the charter was therefore not accepted in time. It is true that this decision was made in a proceeding on the part of the State; but the grounds of the decision are such as show that like objections ought to be entertained at the suit of anybody injured by the doings of a corporation claiming existence through void proceedings.

The acceptance must not only be within reasonable time, but it must be *of that which is offered.* 1 *Morawetz on Corporations, p.* 22; *State vs. Bull,* 26 *Conn.,* 179; *Hammond vs. Straus,* 50 *Md.,* 12. In the last cited case this Court said acceptance is essential to the existence of a corporation, and whether there was an acceptance was a question for a jury under the direction of the Court as to what will amount to an acceptance. The case in which this Court said that was one at law, where the existence of the corporation was in issue. Here the case is in equity and the whole matter is for the Court. The legal existence of a corporation is always open for inquiry. *Hammond vs. Straus,* 50 *Md.,* 12; *Smith vs. Silver Valley Mining Co., et al.,* 64 *Md.,* 85; *Lyons vs. Orange, &c., Railroad Company,* 32 *Md.,* 18; *Agnew vs. Bank of Gettysburg,* 2 *H. & G.,* 493. Acceptance being essential, it becomes a *condition precedent* to corporate life. Whether that has been done within a reasonable time is a question of law for the Court on the facts before it, for decision by the Court, when arising in equity, or for instruction to a jury when the facts are to be found by it. *Loring vs. City of Boston,* 7 *Metc.,* (*Mass.,*) 409; *Chicago & Great Eastern R. R. Co. vs. Dane,* 43 *N. Y.,* 240; *Mizell vs. Bennett,* 4 *Jones,* (*N. C.,*) 429; *Hammond vs. Straus,* 53 *Md.,* 12. The time for finishing the road under the law expired in 1882,

and no effort to get subscribers appears to have been made up to that time; or, if there was such effort, nothing was accomplished until September, 1891, when subscriptions were made and organization was effected. This was nearly ten years after the expiration of the ten years limited for completing the road. Was this an acceptance of the charter as offered? It is admitted that acceptance was necessary, but the appellee claims this was all the acceptance which was required. The terms of the offer could not then be accepted nor complied with. They were impossible. Being impossible of acceptance or of execution, counsel for the appellant most pertinently and forcibly suggests how such an acceptance differs from one made before any limitation had attached, and within undeniably reasonable time, but with express rejection of the time limit? If that had been done, with the Lyons and Orange Railroad case already cited staring at them, it would not have been contended that it would have been a valid acceptance. If not, why should it be a valid one, when parties wait till it is unnecessary to make the exception in relation to the time limit, because that has, by the delay, been rendered an impossible condition? We can see no escape from the conclusion that there is no difference, and that counsels question can only be so answered. But the appellees' counsel contend that this objection cannot, and no objection to the valid existence of this corporation can be made at this time, and in this way; and that it could only be made by the State on *scire facias* or by *quo warranto.* It is unquestionably the law that a forfeiture for non-user or misuser, or for non-compliance with any of the conditions of the charter, after the corporation has once been legally created and invested with franchises, can only be availed of and declared at the suit of the State. The case of *Canal Company vs. Railroad Company,* 4 *G. & J.,* 1, is undeniable authority

for this statement of the law, and we do not question it; but we do not think that case applies, nor do any that have followed its ruling, apply to the case we consider. This case is not one where forfeiture is asked to be declared. It is a question of legal birth. If the corporation had been legally born its life could only be forfeited, and its death declared at the instance of the State; but whether it ever did have life, or in other words ever was born, seems to us, upon both reason and authority, open to inquiry and contest at the instance of any one suffering from its unauthorized acts. If within a reasonable time after the passage of the law, for example, if before the time limit had attached in either of its aspects, the commissioners had taken enough subscriptions to enable the company to organize, and it had organized in acceptance of the charter, and then delays in the construction of the road had occurred, until it was impossible to comply with the requirements of the Act respecting the completion of the road, then we do not think any one could complain but the State, for it could waive the conditions and limitations annexed to the charter. Had such a state of facts existed the *Canal Case,* 4 *G. & J.,* 1, and the case of *Hodges, et al. vs. Balto. Passenger Railway Co., et al.,* 58 *Md.,* 620, and the other cases of like character cited by appellees, would have applied, and this appellant could not be sustained in his application for injunction because of such failure, and for the reason that the corporation was only and legally in existence before the default made; and the State only could complain and ask a forfeiture. This was so in the *Canal Case.* It had been fully invested with franchises, and made a corporation by the express language of the Act of Assembly. In that case and the others relied on there was no question of legal existence in the start. In *Hammond vs. Straus,* 53 *Md.,* already cited, the corporators were named, and declared a cor-

poration; but it was held to be a legitimate inquiry whether the corporation had accepted the terms of a certain charter; and that inquiry was made in a case where the State was no party to the proceeding. A corporation as plaintiff asserting rights must establish its corporate existence to maintain its suit. That is the first step, if its existence be denied and put in issue. If it has committed a wrong and *justifies because* of corporate authority to do what is complained of, it must establish that authority. It will not do to say that because it claims to be a *de facto* corporation it must be assumed to be a legal corporation till the State claims it is not. The common right of men to protection in the enjoyment of their rights forbids such assumption. A corporation cannot gain right to recognition as such simply by claiming to be such and holding itself out as such. *Boyce vs. Trustees, &c., of the M. E. Church,* 46 *Md.,* 372; *Agnew vs. Bank of Gettysburg,* 2 *H. & G.,* 493. In the last cited case Judge ARCHER said: "Upon authority it is clear that the plaintiff, to maintain his case, must show that by law he has been effectually created a corporation." *Franklin Fire Insurance Co. vs. Hart,* 31 *Md.,* 59; *Lyons vs. Orange, Alexandria and Manassas Railroad Co.,* 32 *Md.,* 18; and *Smith vs. The Silver Valley Mining Co., et al.,* 64 *Md.,* 85, establish the same rule, viz., that whenever any act is essentially necessary to be done before a corporation can be regarded as *in esse,* that must be established or the corporation cannot be held to be a legal entity. *Fire Department of New York vs. Kip,* 10 *Wendell,* 266.

The Act of 1872, chapter 284, did not create a corporation *eo instanti.* It names as corporators future subscribers. It does use the term "hereby created," but that means that when there are subscribers, such as the Act calls for, they are hereby declared a corporation. It provided for the formation of a corporation;

but before there could be one *in esse* there must be the requisite subscribers to the stock. We have already said that such subscribers were not only necessary, but they must accept the charter as offered—that this became a condition precedent—that they must be legal subscribers capable of accepting, and must accept within a reasonable time. We have seen that, according to our construction of the statute, the powers of the commissioners, the State's agents, expired when they could no longer offer the charter, as framed by the Legislature, and that their act in taking subscriptions was void; and if so it follows there were no legal subscribers. But if that were not so, these subscribers did not accept within a reasonable time. It is not necessary for us to establish and lay down what in any given case is reasonable time; but we may safely say that, when nothing is done towards an organization and acceptance by subscribers, such as these were, until the full lapse of time within which they were to complete the road contemplated by the Legislature, that such acceptance was not within reasonable time. The offer was not accepted, for it could not be performed. It was impossible to do the thing which was required. We can not say a corporation has been brought into legal existence, which does not get some apparent existence till the thing it was to do can not be done; or that, if it was intended as an acceptance, it was within reasonable time. The offer as made was not accepted. If it accepted at all, it accepted without limitation whatever as to time, as fully as if it had said, we refuse that condition. To allow the commissioners the right to take subscriptions for stock, and then to recognize such subscribers as competent to organize after such a lapse of time, when they could not execute the terms of the contract, would be violating the principles spirit, and terms, of the Act of Assembly. It would be allowing the commissioners to do what the

352     MARYLAND REPORTS.

Bonaparte *vs.* Balto. Hampden & Lake Roland R. R. Co., *et al.*

Legislature did not authorize them to do. It would be according to them the power to change the offer, which the Legislature never designed. It would be allowing, practically, a fraud to be perpetrated on the State, the appellant, and all in *consimili casu;* as this Court said would be the case against the corporation under the circumstances alleged in the bill in the case of *Campbell and Voss vs. Poultney, et al.*, 6 *G. & J.*, 94, if permitted, and where the Court said a bill for injunction on the behalf of a stockholder was a proper remedy.

It was certainly not the intention of the Legislature to allow the commissioners appointed under this statute to perpetuate their existence indefinitely by filling vacancies from time to time as mentioned in the Act, so as to enable them, at any distant period, after the lapse of the time prescribed by the Legislature for doing the work, until such time as they or their successors thought advisable, and then to bring by their act a corporation into existence, at will, which act of theirs nobody could gainsay but the State. If the State did not intend by this Act to give such wonderful powers, then the attempted exercise of such powers was without warrant of law, and accomplished nothing—was void, and any one interested may contest it.

If *that* organization under that Act can not be questioned in this way at the instance of this appellant, then if the taking of subscriptions and organization had been delayed a hundred years; and then that was done which has now been done, nobody, no matter how much injured by its doing, could complain and be heard in the Courts; and if the State did not interfere unexampled injury and loss might be wrought without redress. Although other agencies for meeting the public convenience might, in the meantime, have been devised, adopted and introduced, if the position of the appellees be sound, a hundred years hence it would be possible for the stock to be

Bonaparte *vs.* Balto. Hampden & Lake Roland R R. Co., *et al.*

taken, the charter to be accepted, and the work might proceed to the infinite damage of people who had a right to rely on the Act of Assembly as dead. We can not give our assent to any proposition involving such consequences. Even in the space of nineteen years, great changes will occur in the proximity of a great city. People had a right to assume that this project was abandoned. They had a right to suppose the authority to build the road no longer existed, and to improve, build and act accordingly. They had a right to look to and rely on the limitations of the Act of Assembly. For illustration, suppose, after the lapse of fifty or a hundred years, and the improvement of properties, as suggested, commissioners had taken the subscriptions, and the subscribers claiming corporate powers had organized and proceeded to exercise the powers of eminent domain given them in the seventh section of the Act, and to condemn the right of way through such improved property. Can it be possible that under such state of facts the owners would not be allowed an application for injunction to question the rightful existence of such corporation ? The mind instinctively shrinks from giving a negative answer. If, under such state of facts, the existence of the corporation could be questioned, and the owners could get relief, as, in our opinion, there can be no doubt, it must be competent in this case, and any similar case, to enquire into the question whether a corporation has ever had legal existence. We have already cited numerous authorities in support of this view, showing, as we think, this is the clearly accepted law in this State, and, as we understand it, the law in other States also.

After careful examination of the cases to which we have been cited and many more, we have been able to find no case, where the law is, as in Maryland, which really sustains the position of the appellees. Especial reliance has been placed on the case of *County of Macon*

*vs. Shores*, 97 *U. S.*, 272, and we have examined it with great care, and can not see that it touches the question which is engaging us. That was a suit by a holder of certain county bonds against the county for overdue interest coupons. The County Court of Macon County had, in pursuance of legislative authority, ordered the county's subscription to the Missouri and Mississippi Railroad, and the county had issued the bonds, and this was a suit by a *bona fide* holder of some of those bonds, for interest due. The county, in defence, did raise the question, amongst others, that the railroad, to which the subscription was made, had, at the time of the subscription, no corporate power, not having been organized within one year, as required by law. The Court only held that the plaintiff, being a *bona fide* holder of the bonds, without actual notice of alleged invalidity, no question could be raised as to the regularity of issuing the bonds by the county, as it could not affect his rights; and that the company being a *de facto* corporation when the subscription was made, it was not competent to question the regularity of its existence in that collateral way, in a case where the question at issue in fact was whether the town of Macon was responsible to plaintiff for interest on bonds it had issued, although issued in aid of the railroad. But the Court went further, and said that advantage could only be taken of forfeiture by non-user or mis-user by *quo warranto,* and that individuals could not avail themselves of it in *collateral* suits until it was judicially declared. Being a Missouri case, the Court said that the decisions of that State on the subject were controlling, and cited *Keyser vs. Trustees of Bremen,* 16 *Mo.,* 88, and *Smith, et al. vs. County of Clarke,* 54 *Mo.,* 58. To the statement of the law applicable to the case of *County of Macon vs. Shores,* as laid down by the Supreme Court, we entirely agree. It is in entire harmony with the law, as we understand it to be in such case. The

question being *collaterally* raised, was not cognizable in a case where the gist of the suit was the liability of a county to a *bona fide* holder of bonds it had issued, although issued in aid of such railroad. Besides, the railroad company had been made a corporation by the Act of Assembly, and non-user or mis-user in such case can only be availed of at the suit of the State. Resorting to the Missouri decisions, which the Supreme Court refers to as *controlling* its decision, we find they have no application to the case as we have it presented to us. In *Keyser vs. Trustees of Bremen*, 16 *Mo.*, 88, it was an application for injunction to restrain the trustees of the town from collecting certain taxes. The Court held that the County Court of St. Louis County, under a state of facts *which gave it jurisdiction*, had incorporated the town, and that, therefore, being *a corporation created by legal authority*, proceedings had to be instituted by the State to avoid it for fraud or other justifiable reason; and that the corporate authority thus acquired could not be assailed by a private individual. We have already, in this opinion, asserted the same doctrine. The case of *Smith, et al. vs. County of Clarke*, 54 *Missouri*, 58, presents substantially the same question as was presented in the *Macon Case*, 97 *U. S.*, 272 and in precisely the same way. The question was as to the liability of Clarke County on bonds issued by the county to the Alexandria and Bloomfield Railroad Co., for subscriptions to its stock, to *a bona fide holder*. On a motion for a re-hearing of that case, after decision, the new point was made that the charter of the railroad company had ceased before the company was organized. The Court only said that this question could not be inquired into in a collateval proceeding; that the company *did exist as a matter of fact*, in the exercise of all its chartered franchises, when the subscription to the stock was made by the county authorities. The county had issued the

bonds, and *bona fide* holders owned them, and of course they could not be denied payment for the reason attempted to be set up. None of these cases apply, in our apprehension, to this case. The attack here is directly made against the corporation itself, and that, too, against one which was not made one at the beginning, as in those cases was the case, but only provision was made by which one could come into existence, and which, in our opinion, never did legally acquire life. The order refusing the injunction must be reversed, and the cause must be remanded, that injunction may issue as prayed.

*Reversed and remanded.*

(Decided 17th February, 1892.)


BRYAN, J., delivered the following dissenting opinion, in which ROBINSON and FOWLER, J. concurred:

I maintain that the appellee is validly invested with corporate power   And I shall briefly state the reasons for my opinion.

The statute of 1872, chapter 284, is entitled "An Act to incorporate the Baltimore, Hampden and Lake Roland Railroad Company." In September, 1891, the first subscriptions to the stock of the corporation were made; it was then organized, and is now regularly conducting its business under the claim of chartered right. The question affecting its corporate existence arises under the eleventh section of the Act of Assembly, which is in these words: "And be it enacted, That said company shall commence said railway within three years from the passage of this Act, and complete the same in ten years." The appellant contends that inasmuch as the railway was not commenced within three years, and not completed within ten, the Act lost all its efficacy; that it was not competent for the subscribers to the stock to organize and to exercise the franchises offered by the

Act; but that they were entirely lost by reason of the long delay in making, use of them. We cannot correctly estimate the force of this objection without an accurate view of the rights conferred by the Act of Assembly, and the natural relations of the State and the subscribers to the stock. The Act of incorporation is an offer on the part of the State to give certain privileges to those persons named in the Act as incorporators; when this offer is accepted, the grant of privileges from the State is complete, and full corporate power is conferred. All the authorities without exception consider the State and the incorporators as occupying the same position as private persons contracting, or proposing to contract with each other. It is on this conceded principle that their respective rights and duties are ascertained and determined. Another important consequence also follows; and that is, that third persons are not interested in this contract, and are not authorized to interfere between the parties to it. Their relation has been likened to the case of landlord and tenant, where there is a clause of forfeiture for non-payment of rent. For however long a period the rent may be in arrear, no one can take advantage of the clause of forfeiture but the landlord, and he only by entry for condition broken. No reference is now made to these cases in which by the terms of the lease the estate becomes *ipso facto* void when the rent is not paid by the appointed day. They are like the provisions in some Acts of incorporation which declare that on failure to do certain acts "the corporate existence and powers shall cease." In such cases it has been sometimes held that the forfeiture accrues immediately, and that the franchises are lost without any act or proceeding on the part of the State; as in the analogous case of landlord and tenant, the lease absolutely determines without entry. In *Canal Company vs. Railroad Company*, 4 *Gill and Johnson*, 124, the case before

the Court is compared to a grant of land. The Court say: "And it is like the grant of an estate in land, defeasible on the non-performance of a condition subsequent strictly speaking, as if an estate be granted expressly upon condition to be void on the happening of a certain event. In such case it is perfectly clear, that the estate is not defeated by the mere happening of the event, but that the law permits it to continue, beyond the time when such contingency happens unless the grantor or his heirs, take advantage of the breach of condition by entry, &c., which cannot be done by a stranger. The proceeding by the Government, (the grantor,) for the breach of a condition subsequent, contained in a charter of incorporation, is by *scire facias,* or *quo warranto;* by an individual grantor (or his heirs) of land, by entry." There can be no valid distinction between the different kinds of forfeitures which the State has power to enforce. It may enforce all or any; and it may waive all or any; and no private individual is authorized to interfere either with enforcement or waiver. No distinction has been suggested in any text-book, or in any decided case between forfeitures of rights before the organization of a corporation, and those which occur afterwards. Certainly the power of the State is the same in each case; and the general principle must apply to each case that a right to subject to forfeiture continues to exist, until the forfeiture is enforced by the party who has a right to enforce it. In the *County of Macon vs. Shores,* 97 *United States,* 272, one of the defences to an action by a corporation was that it had no corporate power or existence, that it did not organize, or accept the Act of incorporation within one year as required by law, and that it did not commence the transaction of business within the time prescribed by law for that purpose. The Court said: "The objection that the corporation was *not organized within the time limited by the*

*charter, is unavailing.* It is in effect a plea of *nul tiel corporation.* In *Keyser vs. Trustees of Bremen,* (16 *Mo.,* 88,) the Supreme Court of the State said: 'It cannot be shown in defence to a suit of a corporation, that the charter was obtained by fraud, neither can it be shown that the charter has been forfeited by misuser or non-user.. Advantage can only be taken of such forfeiture by process on behalf of the State, instituted directly against the corporation for the purpose of avoiding its charter; and individuals cannot avail themselves of it in collateral suits, until it be judicially declared.'" I quote this passage to show that the Supreme Court of the United States considered that there was no difference between a forfeiture committed before a corporation is organized, and one which occurs afterwards. In *State vs. Bull,* 16 *Connecticut,* 179, an information at the suit of the State, the franchises granted by an Act of incorporation were declared to have been forfeited and lost because of unreasonable delay on the part of the corporators in accepting the charter. But it was not suggested in the argument or decision of the case that there was any difference between forfeiture of this kind, and any other, so far as its effects were concerned, or the mode of proceeding to take advantage of it. It was not supposed that it was in the power of any one but the State to implead the corporators for such defaults. And as it has never been questioned that the State can at its own will and pleasure waive these forfeitures, it must follow that a private individual cannot enforce them; because if he could do so the State's sole and exclusive prerogative of waiver would be defeated. The proceeding on the part of the appellant would virtually annul the charter, and consequently the right of the State to continue it in force by waiver would be taken away.

I cannot see how the completion of the railway within ten years after the passage of the Act of incorporation

can be regarded as a condition precedent to the existence of the corporation; as one of those indispensable preliminaries which must be performed before the corporation can have an existence. It was impossible that the railway could be constructed before the corporation was organized; its construction was the principal result to be accomplished by the corporation after it should be invested with its franchises. To be sure as this corporation was organized after the expiration of the ten years, it had become an impossibility to complete the road within the prescribed time. But the State has as much right to waive a condition which it has become impossible to perform, as one which, being possible, the corporation refuses or neglects to perform. In what respect is the State's power limited on this subject? By what authority has the limitation ever been declared? On what principle of reason can a distinction be maintained between the power to waive the possible, and the power to waive the impossible. Finally, in what treatise, or in what judicial decision, has the distinction ever been intimated? In *Hodges' Case*, 58 *Md.*, 603, it appeared that a railway company had been authorized by a city ordinance to lay railroad tracks in certain streets in Baltimore. The ordinance enacted that the work was to be commenced within six months from its approval, and to be completed within twelve; and that "otherwise the rights and privileges herein granted shall be null and void." It was attempted by private persons on many grounds to enjoin the railway company from laying its tracks; and among others, for the reason that the work had not been commenced within the appointed time. This Court did not trouble itself with any attenuated distinctions between conditions which had become impossible from lapse of time, and other conditions; but decided that the condition was intended for the benefit of the city, and that the city

might waive it at pleasure, and it denied the right of interference by third persons. I will quote a passage from the Court's opinion: "This is a provision, however, intended for the benefit of the city, and one which its authorities may waive at pleasure. No principle is better settled than that a cause of forfeiture cannot be taken advantage of or enforced against a corporation collaterally or incidentally, or in any other mode than by a direct proceeding for that purpose against the corporation." Now on the mere point of waiver, it is impossible to draw a distinction between this case and the one at bar. If the corporation has forfeited its right to become incorporated, it must be that the State has the power to waive it; and it is a question exclusively between the State and the corporation. The appellant in this case has no more right to take advantage of it than the complainants possessed in *Hodges' Case.*

(Filed 17th Feburary, 1892.)